The **GREYHOUND CORPORATION,**
Petitioner,

v.

**INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.**

No. 75–2062.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 9, 1976.
Decided Jan. 21, 1977.

---

E. Barrett Prettyman, Jr., Washington, D. C., with whom Robert R. Bruce, and W. L. McCracken, Phoenix, Ariz., were on the brief for petitioner.

Edward E. Lawson, Atty., Dept. of Justice, with whom Robert B. Nicholson, Atty., Dept. of Justice, Washington, D. C., was on the brief for United States of America; Carl D. Lawson and Laurence K. Gustafson, Attys., Dept. of Justice, Washington, D. C., also entered appearances for respondent United States of America.

Walter H. Walker, III, Atty., I. C. C., Washington, D. C., for respondent I. C. C.; Robert S. Burk, Acting Gen. Counsel, I. C. C., Washington, D. C., at the time the brief was filed, with whom Charles H. White, Jr., Associate Gen. Counsel and Kenneth G. Caplan, Atty., I. C. C., Washington, D. C., were on the brief for respondent I. C. C.

Before WRIGHT and ROBB, Circuit Judges and GESELL,* United States District Judge for the United States District Court for the District of Columbia.

PER CURIAM:

The Greyhound Corporation petitions this court for review of orders of the Interstate Commerce Commission. The challenged orders require Greyhound to obtain prior ICC approval of all its securities transactions,

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

pursuant to section 20a of the Interstate Commerce Act, 49 U.S.C. § 20a (1970). Greyhound asserts that the orders impermissibly deviate, without explanation, from the ICC's own precedents. We agree, and accordingly remand the case for the ICC to rectify or explain the deviations.

This dispute has its origin in events which occurred in 1963. Prior to that year Greyhound was a motor carrier. In 1963 Greyhound sought to become a holding company by transferring its transportation rights and properties to a subsidiary, and the ICC approved the transfer in an order entitled *California Parlor Car Tours Co.—Pur.— Greyhound Corp.,* 93 M.C.C. 392 (1963) [cited hereafter as "the 1963 order"]. In the same order the ICC imposed the requirements of Section 20a of the Interstate Commerce Act, 49 U.S.C. § 20a, obligating Greyhound to obtain prior ICC approval of all its securities transactions. Section 5(3) of the Act, 49 U.S.C. § 5(3), permits the ICC to impose such requirements on a party acquiring control over a carrier.

The ICC imposed its securities jurisdiction upon Greyhound because in 1963 the principal sources of Greyhound's income were regulated transportation activities. *See* the 1963 order, 93 M.C.C. at 395. At the time 80% of Greyhound's total revenues were generated by transportation-related businesses. By 1972, however, only 20% of Greyhound's total revenues and 40% of its net income were derived from transportation-related activities. Consequently, Greyhound petitioned the ICC to rescind that part of the 1963 order which required Greyhound to obtain prior ICC approval of all its securities transactions.

In 1974 the ICC entered an unpublished order denying Greyhound's petition. *California Parlor Car Tours Co.—Pur.—Greyhound Corp.,* No. MC–F–8531 (ICC Div. 3, March 21, 1974) [cited hereafter as "the 1974 order"]. Greyhound petitioned for reconsideration of the 1974 order and the ICC denied reconsideration in 1975. *California Parlor Car Tours Co.—Pur.—Greyhound*

*Corp.,* No. MC–F–8531 (ICC Div. 3, acting as App.Div., September 12, 1975).

Greyhound then petitioned this court for review contending that the ICC has deviated without explanation from the standards and results announced in previous ICC decisions. We hold that the ICC has in fact so deviated and remand the case for further consideration by the Commission.

█ This court emphatically requires that administrative agencies adhere to their own precedents or explain any deviations from them. *See Columbia Broadcasting System, Inc. v. F. C. C.,* 147 U.S.App.D.C. 175, 454 F.2d 1018 (1971); *Greater Boston Television Corp. v. F. C. C.,* 143 U.S.App. D.C. 383, 444 F.2d 841 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971); *F. T. C. v. Crowther,* 139 U.S.App. D.C. 137, 430 F.2d 510 (1970); *Marine Space Enclosures, Inc. v. F. M. C.,* 137 U.S.App. D.C. 9, 420 F.2d 577 (1969). Of course, the agency is free to make reasoned changes in its policies. However, as this court noted in *Columbia Broadcasting System, Inc. v. F. C. C., supra,* there is an "equally essential proposition that, when an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law." 147 U.S.App.D.C. at 183, 454 F.2d at 1026 [footnote omitted].

█ The ICC's orders in this case contain no such assurance of conformity to the "rule of law"—not even a passing reference to previous decisions in which the agency employed a different standard and reached substantially different results.

The ICC gave two grounds for its 1974 decision: first, Greyhound controlled a major portion of the busing industry; and second, the principal sources of Greyhound's *net* income were transportation-related operations. *See* the 1974 order. These grounds and the results achieved depart materially from the ICC's precedents in three respects.[1]

---

1. In reversing the ICC's decision we by no means suggest that, on remand, the Commis-

sion must ignore Greyhound's *sui generis* position in the busing industry. However, if the

First, the Commission has shifted its definition of what constitutes a company's "principal source" of income for the purposes of deciding whether to require ICC approval of the company's securities transactions. In the past the agency has clearly interpreted "principal source" of income to mean the source of over 50% of the company's income. *See Chicago & N. W. Ry. Co.—Merger—Chicago Great W. Ry. Co.,* 333 I.C.C. 236, 240–41 (1968); *Wells Fargo Armored Service Corp.—Control—Armored Motor Service Co.,* 75 M.C.C. 285, 295 (1958) [cited hereafter as *"Wells Fargo"*]. Yet in the present case, the Commission has interpreted "principal source" of income to include sources of less than half of the company's income—20% of Greyhound's total revenues and 40% of its net income. *See* the 1974 order. The Commission's orders neither explain this shift nor acknowledge that it has even occurred.

The Commission has not only shifted its definition of the "principal source of income" from more than half to something less; the Commission has also shifted without explanation from a gross income test to a net income test. The ICC imposed its securities jurisdiction upon Greyhound in part because Greyhound's principal source of *net* income was transportation. *See* the 1974 order. The income test utilized by the Commission in the past was based upon the percentage of total revenues (rather than net income) which was derived from transportation activities. *See, e. g., Illinois Central Gulf Ry.—Acquisition—G. M. & O. R. R.,* 338 I.C.C. 805, 856–57 (1971) [cited hereafter as *"Illinois Central Gulf"*]; *Lease Plan International Corp.—Control—National Trailer Convoy, Inc.,* 93 M.C.C. 203, 206–07 (1963) [cited hereafter as *"Lease Plan"*]; *Wells Fargo, supra* at 295. The agency's orders give no explanation for this change from a gross income or total revenue test to a net income test.

Finally, the ICC has not only deviated in this case from its own standards; the Commission has also reached a result inconsistent with the agency's precedents. One prior decision of the Commission in particular provides a startling contrast to the treatment afforded Greyhound. In *Lease Plan, supra,* the ICC chose not to impose its securities jurisdiction because not enough of the company's revenues were derived from regulated carriers. Yet the ICC held in the present case that Greyhound, which gets only half as much of its revenues from regulated transportation activities as did the Lease Plan International Corporation,[2] derived its principal income from such activities and was therefore subject to the ICC's securities jurisdiction. Nowhere in its order in the present case does the ICC so much as indicate that it is aware of these discrepancies.

Even when the ICC has in the past chosen to impose its securities jurisdiction, the Commission has required that the company in question obtain approval only of those securities issuances related to the carriers which the company controlled. *See Illinois Central Gulf, supra* at 857. Greyhound, in contrast, is now required to obtain prior ICC approval of all its securities transactions. The Commission has suggested no reason why Greyhound should be burdened with such singular treatment, and we perceive none.

In sum, the ICC has deviated from the results which it has decreed in the past as well as from the standards the agency has applied to reach those results. The ICC would do well to heed the warning we gave to the Federal Communications Commission in *Columbia Broadcasting System, Inc. v. F. C. C.:*

> Faced with two facially conflicting decisions, the Commission was duty bound to justify their coexistence. The Com-

---

Commission does choose to rely on the fact of Greyhound's predominance, it must state clearly the relevance of this fact to its decision.

2. The Lease plan International Corporation derived 29.4% of its revenues from and devoted 41% of its investment to regulated carriers. 93

M.C.C. at 206–07. Comparable figures for Greyhound in 1973 were 15% and 21% respectively. (J.A. 61) The ICC's opinion in the *Lease Plan* case does not give figures for net income, so no comparison on that basis is possible.

mission's utter failure to come to grips with this problem constitutes an inexcusable departure from the essential requirement of reasoned decision making.

147 U.S.App.D.C. at 184, 454 F.2d at 1027.

■ We remand this case to the ICC for reconsideration in light of the reasoning outlined above. A few additional words of guidance for the Commission appear in order. We do not remand for the Commission merely to reiterate its decision with some new words of justification added. Our decision requires that the Commission affirmatively and in good faith reconsider Greyhound's case. If after such reconsideration the Commission still deems it necessary to depart from its established precedents, then the agency may do so provided that it adequately supports its reasons. Even then, the ICC must "do more than enumerate factual differences, if any, between [this case] and the other cases; it must explain the relevance of those differences to the purposes of [the enabling statute]." *Melody Music, Inc. v. F. C. C.,* 120 U.S.App.D.C. 241, 244, 345 F.2d 730, 733 (1965).

*So Ordered.*