**AERO MAYFLOWER TRANSIT COMPANY, INC., et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Gollott & Sons Transfer & Storage, Inc., Intervenors.**

No. 81–1951.

United States Court of Appeals, District of Columbia Circuit.

Argued April 2, 1982.

Decided June 17, 1983.

Alan F. Wohlstetter, with whom Stanley I. Goldman, Washington, D.C., was on brief, for petitioners.

Charles A. Stark, I.C.C., with whom Robert S. Burk, Acting Gen. Counsel, Ellen K. Schall, Deputy Associate Gen. Counsel, I.C.C., and Robert B. Nicholson and Marion L. Jetton, Attys., Dept. of Justice, Washington, D.C., were on brief, for respondents.

Robert J. Gallagher, Washington, D.C., entered an appearance for intervenors.

Before ROBINSON, Chief Judge, ROBB,

Senior Circuit Judge, and LARSON,* Senior District Judge.

Opinion for the Court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

Petitioners challenge on both substantive and procedural grounds an order of the Interstate Commerce Commission granting the application of Gollott & Sons Transfer & Storage, Inc., for a permit to transport specified types of personal property in interstate commerce as a motor contract carrier. Our analysis of petitioners' claims reveals no reversible error, and we accordingly affirm.

## I. THE FACTUAL BACKGROUND

Gollott & Sons filed with the Commission an application, buttressed by two verified statements, for a permit to operate as a motor contract carrier to transport household goods, unaccompanied baggage, and used cars in interstate commerce under an agreement with Gulf Forwarding, Inc.[1]

This contractual arrangement contemplated that Gollott & Sons would designate two vehicles [2] of which Gulf Forwarding would have preferential use continuously over a period of time,[3] later ascertained to be one year.[4] As preferential user of these vehicles, Gulf Forwarding would have power not only to ensure their availability to transport any and all of its intended shipments of the described personalty, but also to prohibit their hire by other shippers even when Gulf Forwarding did not use them fully or at all. Conversely, the contracting parties agreed that, if the consent of Gulf Forwarding was procured, Gollott & Sons would have authority to use these vehicles for the benefit of other shippers when Gulf Forwarding had no transportation requirements, and even to haul other shippers' goods side-by-side with Gulf Forwarding's freight when the vehicles had excess capacity. Finally, in an effort to demonstrate the need for the authority requested, Gollott & Sons represented that it would move lightweight or shorthaul shipments and perform residential pickups and deliveries for Gulf Forwarding, which services it claimed to be unavailable from other carriers yet neces-

* Of the United States District Court for the District of Minnesota, sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. See Application of Gollott & Sons Transfer & Storage, Inc., for Motor Contract Carrier Certificate, filed Dec. 23, 1980, Docket No. MC–120472 (Sub-No. 6), Joint Appendix (J.App.) 4–33. Gulf Forwarding qualifies as a "freight forwarder" under 49 U.S.C. § 10102(8) (Supp. IV 1980).

2. The record reveals both inconsistency and inconclusiveness as to the precise number of vehicles reserved by the applicant for the use of Gulf Forwarding. Gollott & Sons on some occasions specified three, not two, vehicles, see Application of Gollott & Sons Transfer & Storage, Inc., for Motor Contract Carrier Certificate, supra note 1, at 10, 27, J.App. 13, 31, and on others stated that there would be "at least two," see id. at 2, 23, J.App. 5, 27. The applicant dissipated this confusion, however, by its reply statement, in which it asserted that exactly two vehicles would be placed at Gulf Forwarding's disposal. See Reply of Gollott & Sons Transfer & Storage, Inc., Verified Statement of Tyrone Gollott, filed Mar. 31, 1981,

Gollott & Sons Transfer & Storage, Inc., Contract Carrier Application, Docket No. MC–120472 (Sub-No. 6), at 4, J.App. 86. Because this statement was proper rebuttal, see note 26 infra, to the protestants' claim that the applicant had not sufficiently identified the dedicated vehicles, see Protests of Global Van Lines, Inc., et al., filed Mar. 6, 1981, Gollott & Sons Transfer & Storage, Inc., Contract Carrier Application, supra, at 1, 4, 6, J.App. 66, 71, 73, we decline to utilize applicant's failure to establish firmly the number of the dedicated vehicles in its application materials as ground for setting aside the order under review.

3. See Application of Gollott & Sons Transfer & Storage, Inc., for Motor Contract Carrier Certificate, supra note 1, at 10–11, J.App. 13–14; Reply of Gollott & Sons Transfer & Storage, Inc., Verified Statement of Houston Gollott, filed Mar. 31, 1981, Gollott & Sons Transfer & Storage, Inc., Contract Carrier Application, Docket No. MC–120472 (Sub-No. 6), at 6, J.App. 105.

4. See Reply of Gollott & Sons Transfer & Storage, Inc., supra note 3, at 3, J.App. 102. See note 26 infra.

sary to satisfy the shipper's distinct needs.[5]

Solely on the basis of the application and accompanying verified statements, the Commission granted the application preliminarily and published a statement to that effect in the Federal Register.[6] This decision-notice contained neither findings of fact nor conclusions of law in support of the award.[7] Petitioners then protested the Commission's decision, urging various grounds for setting the preliminary grant aside.[8]

In particular, petitioners contended that Gollott & Sons had neither assigned specified vehicles for the exclusive use of Gulf Forwarding over a definite period of time nor contracted to provide services necessary to satisfy any distinct needs Gulf Forwarding might possess, and that the applicant had therefore failed to qualify as a motor contract carrier under Section 10102(13)(B) of the Interstate Commerce Act.[9] Petitioners further maintained that transportation of this type of personalty, especially on behalf of a commonly-controlled affiliate such as Gulf Forwarding, constituted common—not contract—carriage,[10] that the vehicles purportedly dedicated by Gollott & Sons to the use of Gulf Forwarding would clearly be insufficient to meet the latter's needs,[11] and that, in any event, this arrangement would not promote either the public interest or the national transportation policy as required by Section 10923(a)(2) of the Interstate Commerce Act.[12] Finally, petitioners moved for vacatur of the preliminary grant on the ground that the brevity of the decision-notice violated Section 8(b) of the Administrative Procedure Act, as amended,[13] and requested additionally that the Commission hold an evidentiary hearing and grant them leave to depose the applicant's witnesses in aid thereof.[14]

After Gollott & Sons filed a statement in reply,[15] a Commission Review Board upheld the preliminary decision to grant the appli-

---

5. See Application of Gollott & Sons Transfer & Storage, Inc., for Motor Contract Carrier Certificate, *supra* note 1, at 23–24, 27–28, J.App. 27–28, 31–32.

6. See 46 Fed.Reg. 9802, 9805 (1981).

7. See Brief for Respondents at 42.

8. See Protests of Global Van Lines, Inc., *et al.*, *supra* note 2, J.App. 36–82.

9. *Id.*

10. See *id.* Petitioners have continued to argue that the Commission did not adequately take into account the fact that Gollott & Sons and Gulf Forwarding are commonly-controlled affiliates. Absent cause to ignore the separate corporate identities of these firms, however, reversal on this ground is unwarranted. See *Schenley Distillers Corp. v. United States*, 326 U.S. 432, 436–437, 66 S.Ct. 247, 249, 90 L.Ed. 181, 184 (1946).

11. See Protests of Global Van Lines, Inc., *et al.*, *supra* note 2, J.App. 36–82. More specifically, petitioners asserted before the agency, as they do here, that Gulf Forwarding's need for as many as 300 shipments annually cannot expectably be satisfied by only two vehicles. See Brief for Petitioners at 22–23. We do not consider it so unlikely, however, that two vehicles could move 300 shipments during one year as to warrant the conclusion that the Commission's decision is either arbitrary or bereft of substantial supportive evidence in the record, especially in light of Gulf Forwarding's statement that the services of Gollott & Sons would indeed be adequate for its needs, Reply of Gollott & Sons Transfer & Storage, Inc., *supra* note 2, at 7–8, J.App. 89–90.

12. See Protests of Global Van Lines, Inc., *et al.*, *supra* note 2, J.App. 36–82.

13. *Id.* The section referred to is 5 U.S.C. § 557(c) (1976).

14. See Protests of Global Van Lines, Inc., *et al.*, *supra* note 2, J.App. 36–82. Petitioners argued before the agency's Review Board that disallowance of an evidentiary hearing and leave to take depositions would transgress their Fifth Amendment right to due process of law. *Id.* In addition, petitioners moved to strike the reply statement of Gollott & Sons on the ground that it contained evidence inadmissible under governing procedural regulations. See Brief for Petitioners at 4. The latter motion apparently was filed after the Review Board had already promulgated its initial decision. See Brief for Respondents at 13; see also note 26 *infra*.

15. Reply of Gollott & Sons Transfer & Storage, Inc., *supra* notes 2, 3, J.App. 83–119.

cation.[16] The Board fortified its decision by finding, first, that the contemplated contractual arrangement qualified Gollott & Sons for motor contract carrier status under Section 10102(13)(B) [17] and, second, that the arrangement would serve the public interest because Gollott & Sons proposed to provide Gulf Forwarding with otherwise unavailable services and none of the petitioners would suffer significant harm.[18] At the same time, the Board denied the several outstanding petitions, holding that any deficiencies in the decision-notice had been cured by subsequent proceedings, and that petitioners had not sufficiently demonstrated that an evidentiary hearing or depositions would produce information relevant to the Board's deliberations to justify employment of those procedures.[19] Expectably, petitioners appealed from the Board's decision,[20] which the Commission affirmed in summary fashion.[21] Review by this court was then sought.[22]

## II. THE SUBSTANTIVE ISSUES

■ Petitioners' principal claim is that Gollott & Sons has not qualified for a permit as a motor contract carrier under Section 10102(13)(B) of the Interstate Commerce Act.[23] This provision specifies in pertinent part that status as a motor contract carrier can be acquired only by assigning specified motor vehicles "for a continuing period of time for the exclusive use of," [24] or by furnishing motor vehicle transportation "designed to meet the distinct needs of," [25] one or more shippers. It is clear from a reading of the section that an applicant need satisfy only one of these demands.

The Commission found that the contractual arrangement here at issue, by which Gollott & Sons accorded Gulf Forwarding preferential use of two designated vehicles for a period of one year, constituted sufficient dedication of these vehicles to satisfy the exclusive-use requirement of Section 10102(13)(B)(i). Petitioners, on their part, have advanced a literal and narrow reading of this provision, arguing in reliance thereon that the Commission's construction is impermissibly expansive. We find the Commission's outcome consistent with both its long-established interpretation of this section and the national transportation policy, as amended by the Motor Carrier Act of 1980,[26] and accordingly reject petitioners' contention.

16. *Gollott & Sons Transfer & Storage, Inc., Contract Carrier Application,* Docket No. MC–120472 (Sub-No. 6) (initial decision) (Apr. 3, 1981), J.App. 120–124 [hereinafter cited as *Initial Decision*].

17. *Id.* at 2, J.App. 122.

18. *Id.* at 2–3, J.App. 122–123.

19. *Id.* at 1, J.App. 121. The Commission at no time during administrative proceedings denied, or even acknowledged, the protestants' motion to strike applicant's reply statement. See also note 14 *supra* and note 26 *infra.*

20. Appeal of Protestants Global Van Lines, Inc., *et al.,* filed May 6, 1981, *Gollott & Sons Transfer & Storage, Inc., Contract Carrier Application,* Docket No. MC–120472 (Sub-No. 6), J.App. 125–138.

21. *Gollott & Sons Transfer & Storage, Inc., Contract Carrier Application,* Docket No. MC–120472 (Sub-No. 6) (final decision) (June 11, 1981), J.App. 139–141.

22. *Aero Mayflower Transit Co. v. ICC,* No. 81–1951 (D.C.Cir.) (petition for review) (filed Sept. 3, 1981).

23. 49 U.S.C. § 10102(13)(B) (Supp. IV 1980). Petitioners have argued that the applicant's services do not meet the "distinct needs" test of § 10102(13)(B)(ii), 49 U.S.C. § 10102 (13)(B)(ii) (Supp. IV 1980), relying particularly on *ICC v. J–T Transport Co.,* 368 U.S. 81, 90–93, 82 S.Ct. 204, 210–212, 7 L.Ed.2d 147, 154–157 (1961). The Commission concluded that Gollott & Sons had survived the test, *Initial Decision, supra* note 16, at 2, J.App. 122, but we do not resolve that matter here. Our holding that the Commission correctly determined that Gollott & Sons satisfied the exclusive-use test is itself sufficient basis for affirmance.

24. 49 U.S.C. § 10102(13)(B)(i) (Supp. IV 1980).

25. *Id.* § 10102(13)(B)(ii).

26. Pub.L. No. 96–296, 94 Stat. 793 (1980). Petitioners say also that Gollott & Sons did not identify the term of the contract in its application and supportive documents, and that it therefore failed to meet the requirement that a motor contract carrier must dedicate vehicles to the exclusive use of a shipper over a *definite* period of time. See Brief for Petitioners at

■ Under well-settled doctrine, a court will reject an agency's construction of a statute it administers only for "compelling" reasons,[27] provided the construction was made contemporaneously with enactment of the statute[28] and has been followed consistently[29] over a lengthy period of time.[30] Although the Commission has not heretofore decided precisely the issue implicated here, it has adhered without deviation and over many years to a particular interpretation of Section 10102(13)(B), the nascent promulgation of which was relatively concurrent with adoption of the exclusive-use test in 1957, which entails the conclusion that Gollott & Sons measures up as a motor contract carrier.

In *Kansas-Arizona Motor Express, Inc.,*

---

18–19. Gollott & Sons rectified this omission in its reply statement before the Review Board, identifying the contract term as one year. See Reply of Gollott & Sons Transfer & Storage, Inc., *supra* note 3, at 3, J.App. 102. Petitioners contend, however, that a then-applicable interim rule of the Commission prohibited consideration of the information supplied. See Brief for Petitioners at 19 n. 10. The Commission in turn argues that this regulation did not interpose such a bar. See Brief for Respondents at 20 n. 8. The interim rule provided:

The reply statement may not contain new evidence. It shall only rebut or further explain matters previously raised.

49 C.F.R. § 1100.247(A)(m)(2), 45 Fed.Reg. 45534, 45541 (1980).

Courts normally will defer substantially to an agency's interpretation of its own regulations. See *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48, 56 (1977); *INS v. Stanisic,* 395 U.S. 62, 72, 89 S.Ct. 1519, 1525–1526, 23 L.Ed.2d 101, 109 (1969); *Thorpe v. Housing Auth.,* 393 U.S. 268, 276, 89 S.Ct. 518, 523, 21 L.Ed.2d 474, 480–481 (1969); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702 (1945). That principle is inapplicable here, however, because the Commission did not undertake to interpret the rule in question during any stage of the administrative proceedings. Nevertheless, we agree with the construction offered by the Commission before this court. When petitioners protested the preliminary grant, they claimed an application deficiency that entailed nonsatisfaction of a statutory prerequisite to motor contract carrier status. See Protests of Global Van Lines, Inc., *et al., supra* note 2, at 4, J.App. 71. This protest rendered applicant's disclosure of the contract term in its responsive statement proper rebuttal material under the rule.

**27.** See, *e.g., CBS v. FCC,* 453 U.S. 367, 382, 101 S.Ct. 2813, 2823, 69 L.Ed.2d 706, 720 (1981); *FCC v. WNCN Listeners Guild,* 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521, 536 (1981); *Miller v. Youakim,* 440 U.S. 125, 144 n. 25, 99 S.Ct. 957, 969 n. 25, 59 L.Ed.2d 194, 209 n. 25 (1979); *New York State Dep't of Social*

Servs. v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516–2517, 37 L.Ed.2d 688, 699 (1973); *CBS v. Democratic Nat'l Comm.,* 412 U.S. 94, 121, 93 S.Ct. 2080, 2096, 36 L.Ed.2d 772,.794 (1973); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, 384 (1969).

**28.** See, *e.g., EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 600 n. 17, 101 S.Ct. 817, 823 n. 17, 66 L.Ed.2d 762, 770 n. 17 (1981); *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519, 525 (1979); *General Elec. Co. v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343, 358 (1976); *Udall v. Tallman, supra* note 26, 380 U.S. at 16, 85 S.Ct. at 801, 13 L.Ed.2d at 625.

**29.** See, *e.g., CBS v. FCC, supra* note 27, 453 U.S. at 382, 101 S.Ct. at 2823, 69 L.Ed.2d at 720; *EEOC v. Associated Dry Goods Corp., supra* note 28, 449 U.S. at 600 n. 17, 101 S.Ct. at 823 n. 17, 66 L.Ed.2d at 770 n. 17; *National Muffler Dealers Ass'n v. United States, supra* note 28, 440 U.S. at 477, 99 S.Ct. at 1307, 59 L.Ed.2d at 525; *Piper v. Chris-Craft Indus., Inc.,* 430 U.S. 1, 41 n. 27, 97 S.Ct. 926, 949 n. 27, 51 L.Ed.2d 124, 153 n. 27 (1977).

**30.** *National Muffler Dealers Ass'n v. United States, supra* note 28, 440 U.S. at 477, 99 S.Ct. at 1307, 59 L.Ed.2d at 525; *International Bhd. of Teamsters v. Daniel,* 439 U.S. 551, 566 & n. 20, 99 S.Ct. 790, 800 & n. 20, 58 L.Ed.2d 808, 820 & n. 20 (1979); *Piper v. Chris-Craft Indus., Inc., supra* note 29, 430 U.S. at 41 n. 27, 97 S.Ct. at 949 n. 27, 51 L.Ed.2d at 153 n. 27. Of course, even if an agency interpretation is not contemporaneous with enactment of the statute, is of short duration, or is inconsistent with prior agency promulgations, the thoroughness and validity of the agency's reasoning may entitle the interpretation to some weight. See, *e.g., Skidmore v. Swift & Co.,* 323 U.S. 134, .140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944). So it is that, even had the Commission never promulgated the primary-access doctrine that we invoke in support of affirmance, see text at notes 31–38 *infra,* we would yet be constrained to affirm its decision out of deference to its reasoned attempt to construe § 10102(13)(B)

*Conversion Proceeding,*[31] decided in 1960, the Commission first indicated that a carrier could qualify under the Interstate Commerce Act for motor contract transportation with respect to its agreement with a particular shipper even though the vehicles dedicated to that shipper could be used by other shippers at various times during the term of the agreement. The Commission held, more specifically, that the exclusive-use test did not preclude motor contract carriers from leasing their vehicles to other shippers for return trips following haulage of contracting shippers' goods, justifying this decision on the ground that backhaulage for another shipper would not have "any greater effect on the availability of applicant's equipment to its contracting shipper than would be the case with an empty movement."[32] The Commission further explicated this rationale two years later in *Connell Transport Company Extension—New York, New York,*[33] when it again held that backhaul-trip leasing does not negate motor contract carrier status; it stated that, when determining whether an assignment of vehicles is "exclusive,"

> it is the substance of the arrangements and not their form with which we are concerned. Where there is substantial evidence of dedication of vehicles to a

shipper's use under a continuing arrangement, and the facts demonstrate that this particular equipment will be constantly available to the contracting shipper in that arrangement, [backhaul-trip leasing is not inconsistent with motor contract carriage].[34]

This position later achieved its clearest and most conclusive articulation in *Owens Contract Carrier Application,*[35] when the Commission declared that the exclusive-use provision

> does not, in our opinion, necessarily require that specific vehicles be used for one shipper to the exclusion of all other shippers; we believe that the assignment of specific vehicles to shippers is contemplated by section 203(a)(15) [now Section 10102(13)(B)(i)] [if] the contracting shippers have primary access to such equipment, may view such equipment as their own, and need not compete for its use either among themselves or with others.[36]

Since *Owens,* this "primary access" doctrine has governed the Commission's construction of the statutory provision here in dispute.[37] Applied to this case, the doctrine leads ineluctably to the conclusion that Gollott & Sons has assigned two vehicles to the "exclusive use" of Gulf Forwarding, whose

---

consonantly with the Motor Carrier Act of 1980, see text at notes 39–46 *infra.*

**31.** Docket No. MC–109307 (Sub-No. 13), 83 M.C.C. 821 (1960), as reported in *Interstate Express, Extension—Schilling, Montana,* Docket No. MC–108973 (Sub-No. 6), 86 M.C.C. 637, 638–639 (1961).

**32.** *Kansas-Arizona Motor Express, Conversion Proceeding, supra* note 31, as reported and quoted in *Interstate Express, Extension—Schilling, Montana, supra* note 31, at 639.

**33.** Docket No. MC–111442 (Sub-No. 6), 91 M.C.C. 113 (1962).

**34.** *Id.* at 121. See also *Standard Forwarding Co., Extension—Iowa,* Docket No. MC–16536 (Sub-No. 4), 110 M.C.C. 459, 466 (1969); *Samack, Inc., Contract Carrier Application Segundo,* Docket No. MC–119193 (Sub-No. 1), 105 M.C.C. 524, 527 n. *** (1967); *Francis A. Aubrey Extension—Milwaukee and New York City,* Docket No. MC–110884 (Sub-No. 9), 100 M.C.C. 652, 656–657 (1966).

**35.** Docket No. MC–125230, 100 M.C.C. 34 (1965).

**36.** *Id.* at 39.

**37.** Several Commission decisions have expressly recognized the primary-access doctrine, see, *e.g., Conalco Contract Carrier, Contract Carrier Application,* Docket No. MC–138279, 125 M.C.C. 361, 367 (1976); *Continental Contract Carrier Corp. Extension—Modification of Permit,* Docket No. MC–124796 (Sub-No. 55), 121 M.C.C. 882, 900 (1975); *Dudden Elevator, Extension—Iron and Steel Articles,* Docket No. MC–133436 (Sub-No. 14), 119 M.C.C. 318, 321–323 (1974); *Interstate Contract Carrier Corp. Extension—Indianapolis Paper,* Docket No. MC–134599 (Sub-No. 25), 120 M.C.C. 191, 196 (1972). Others have expressly affirmed the reasoning of *Owens,* though without specific reference to the doctrine. See, *e.g., Samack, Inc., Contract Carrier Application Segundo, supra* note 34, 105 M.C.C. at 527 n. ***; *Francis A. Aubrey Extension—Milwaukee and New York City, supra* note 34, 100 M.C.C. at 657.

status as preferential user entails the right of sole control over—and hence primary access to—these vehicles for the life of the contract. Accordingly, in the absence of compelling or other persuasive reasons to reject this well-established administrative interpretation of Section 10102(13)(B), we accept the primary-access doctrine and endorse its governance of the instant case.[38]

**38.** Respondents apparently have conceded that the decision here challenged departs from prior agency practice insofar as it holds that the exclusive-use test does not preclude a contractual arrangement under which other shippers' freight might be moved in the same vehicles as Gulf Forwarding's when excess space permits. See Brief for Respondents at 25–26. Our review of relevant Commission precedent, however, reveals that it is far from clear that the decision under review traverses agency practice in this regard. Although the Commission, in *Motor Haulage Company, Contract Carrier Application,* Docket No. MC–31214, 46 M.C.C. 107, 124 (1946), stated unambiguously that haulage is not exclusive if goods of two or more shippers are transported at the same time in the same vehicles, that case involved interpretation of a permit limitation rather than construction of legislation. Indeed, Congress did not enact the statutory provision here at issue—§ 10102(13)(B)—until 1957, eleven years after the Commission decided *Motor Haulage,* see Pub.L. 85–163, 71 Stat. 411 (1957), codified as amended at 49 U.S.C. § 10102(13)(B) (Supp. IV 1980). The other two cases cited by the Commission are similarly inconclusive. While the Commission in *Owens Contract Carrier Application, supra* note 35, acknowledged *Motor Haulage* without overruling it, *id.* at 38–39, the agency at the same time indicated that the case cannot be read as establishing the broad proposition that the exclusive-use test "necessarily require[s] that specific vehicles be used for one shipper to the exclusion of all other shippers," *id.* at 39. Furthermore, in *Armored Carrier Corp. Extension—Wisconsin,* Docket No. MC–112750 (Sub-No. 127), 98 M.C.C. 314, 317 (1965), the Commission reiterated the *Motor Haulage* position without indicating whether the contracting shipper in the case before it nevertheless possessed primary access to the dedicated vehicles. *Armored Carrier,* accordingly, is of uncertain relevance to the case at bar, in which Gulf Forwarding clearly has primary access to the designated vehicles as preferential user. Taken on their own terms, then, these three cases do not, we believe, reveal holdings of sufficient clarity to justify the post hoc conclusion of the Commission's counsel that they interpreted the motor contract carrier provisions of the Interstate Commerce Act to preclude freight intermixture under all circumstances. Indeed, that counsel's reading of these cases places them in inexplicable contradiction with the primacy-access doctrine, to which the Commission has long and otherwise consistently adhered, only confirms our belief that the reading accords the cases unwarranted significance.

Even if, however, we accepted the argument that the decision under review charted new territory by granting the application despite the potential for carriage of other shippers' freight with that of Gulf Forwarding on dedicated vehicles, we still would affirm the Commission. It is well-settled that an agency is not bound to adhere strictly to the doctrine of stare decisis, but rather may modify or overturn prior norms or practices in line with evolving perceptions of the public interest, provided the agency recognizes the departure and justifies the new position by reasoned explanation. See *EDF v. Costle,* 211 U.S.App.D.C. 313, 327, 657 F.2d 275, 289 (1981); *Hatch v. FERC,* 210 U.S.App.D.C. 110, 119, 654 F.2d 825, 834 (1981); *International Detective Serv. v. ICC,* 198 U.S.App.D.C. 334, 345 n. 23, 613 F.2d 1067, 1078 n. 23 (1979); *Food Marketing Inst. v. ICC,* 190 U.S.App.D.C. 388, 393, 587 F.2d 1285, 1290 (1978); *American Public Gas Ass'n v. FPC,* 186 U.S.App.D.C. 23, 38, 567 F.2d 1016, 1031 (1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *Greyhound Corp. v. ICC,* 179 U.S.App.D.C. 228, 230, 551 F.2d 414, 416 (1977); *CBS v. FCC,* 147 U.S.App.D.C. 175, 183, 454 F.2d 1018, 1026 (1971); *Greater Boston Television Corp. v. FCC,* 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971); *FTC v. Crowther,* 139 U.S.App.D.C. 137, 140–141, 430 F.2d 510, 513–514 (1970); *New Castle Cty. Airport Comm. v. CAB,* 125 U.S.App.D.C. 268, 270, 371 F.2d 733, 735 (1966), *cert. denied,* 387 U.S. 930, 87 S.Ct. 2052, 18 L.Ed.2d 991 (1967). See also *Atchison, T. & S.F. Ry. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350, 362 (1973); *Secretary of Agriculture v. United States,* 347 U.S. 645, 652–653, 74 S.Ct. 826, 831, 98 L.Ed. 1015, 1023–1024 (1954); *FCC v. WOKO, Inc.,* 329 U.S. 223, 228, 67 S.Ct. 213, 216, 91 L.Ed. 204, 208 (1946). In the instant case, the Commission acknowledged petitioners' claim of inconsistency between its decision and prior agency precedent, see *Initial Decision, supra* note 16, at 2, J.App. 122, but then, by reference to the Motor Carrier Act of 1980, justified its conclusion that Gollott & Sons qualified as a motor contract carrier. *Id.* Because this legislation amended the national transportation policy to include the promotion of equipment and energy efficiencies, and, implicitly, because the contract by which Gulf Forwarding acquired rights as preferential user minimized underutilization of the two designated vehicles, *id.,* the Commission refused to condemn such arrangements by technical and rigid construction of the exclusive-use test. In light

There are, in addition, independent grounds upon which we affirm the Commission's holding that Gollott & Sons qualifies as a motor contract carrier under Section 10102(13)(B)(i). Apart from the reasonableness of the agency's interpretation of the phrase "exclusive use" as encompassing contractual arrangements whereby the shipper, by virtue of its status as preferential user, has power to ensure that no other shipper can hire the dedicated vehicles for the duration of the agreement, the Commission's award comports with national transportation policy. By enactment of the Motor Carrier Act of 1980,[39] Congress reformulated that policy specifically to promote "the most productive use of equipment and energy resources."[40] As the Commission itself has implicitly recognized,[41] the construction of Section 10102(13)(B)(i) urged by petitioners would contravene the policy by promoting underutilization and even idleness of motor vehicles dedicated under this section. While, as petitioners point out,[42] Section 10102(13)(B) nowhere expressly incorporates or even mentions the national transportation policy, the Commission clearly was justified to inform its interpretation and application of that section by reference to the policy. Section 10101(a) declares the national transportation policy[43] and Section 10101(b) explicitly provides that the statutory directives at issue "shall be administered and enforced to carry out the policy of this section."[44] This is, moreover, precisely the result intended by Congress when, as a prelude to adoption of the Motor Carrier Act of 1980, it stated unambiguously that "[t]he National Transportation Policy sets the tone for the regulatory structure and is the basis for determining the meaning of statutory provisions."[45] That the Commission's construction of the exclusive-use test thus promotes objectives central to the national transportation policy further vindicates, we think, the agency's decision to grant the application of Gollott & Sons for a permit to operate as a motor contract carrier.[46]

of this recognition and the eminently reasonable justification of the putative departure from earlier agency practice, we affirm the Commission's decision to adhere to the primary-access doctrine in finding that Gollott & Sons qualified as a motor contract carrier. See also *Skidmore v. Swift & Co., supra* note 30, 323 U.S. at 140, 65 S.Ct. at 164, 89 L.Ed. at 129.

39. Pub.L. No. 96–296, 94 Stat. 793 (1980).

40. 49 U.S.C. § 10101(a)(7)(C) (Supp. IV 1980).

41. See *Initial Decision, supra* note 16, at 2, J.App. 122.

42. Brief for Petitioners at 17.

43. 49 U.S.C. § 10101(a) (Supp. IV 1980).

44. *Id.* § 10101(b).

45. H.R.Rep. No. 1069, 96th Cong., 2d Sess. 11–12 (1980); accord, S.Rep. No. 641, 96th Cong., 2d Sess. 4 (1980), U.S.Code Cong. & Admin. News 1980, pp. 2283, 2293.

46. In addition to its inquiry to determine whether an applicant qualifies under § 10102(13)(B), 49 U.S.C. § 10102(13)(B) (Supp. IV 1980), the Commission must make various other determinations before it grants a permit to operate as a motor contract carrier. Among them are that an award would be consistent with the public interest and national transportation policy, *id.* § 10923(a)(2), and that the applicant is "fit, willing, and able" to furnish the proposed services compliably with applicable statutes and regulations, *id.* § 10923(a)(1). Furthermore, to assist the Commission in ascertaining whether grant of the application would promote the public interest, Congress has required the agency to consider the nature of the intended transportation, *id.* § 10923(b)(3)(A), the injury inflicted upon protesting carriers by grant of the application, *id.* § 10923(b)(3)(B), the impact of a denial of the application upon contracting parties, *id.* § 10923(b)(3)(C), and the changing needs of contracting shippers, *id.* § 10923(b)(3)(D). In the case at bar, although petitioners contended before the agency that the preliminary grant should be set aside on the grounds that the applicant could not provide adequate transportation services and that neither the public interest nor the national transportation policy would be fostered by the award, see Protests of Global Van Lines, *et al., supra* note 2, J.App. 36–82, they have not pressed these claims here. We find, in any event, that the agency's decision-making on this score has not been legally deficient. The Commission assayed the factors enumerated in § 10923(b)(3), 49 U.S.C. § 10923(b)(3) (Supp. IV 1980). See *Initial Decision, supra* note 16, at 2, J.App. 122. Moreover, its determinations that the applicant is able to provide the proposed services and comply with applicable law, *id.* at 3, J.App. 123, and that the public interest and the national transportation policy sanction the award, *id.* at

### III. The Procedural Issues

In addition to their substantive claims, petitioners contend that the Commission conducted the administrative proceedings in derogation of their procedural entitlements. The primary claim in this regard[47] is that the Commission's original decision-notice, concededly barren of findings of fact or conclusions of law, violated Section 8(b) of the Administrative Procedure Act, as amended.[48] We find, however, that the failure of the decision-notice to proffer supportive factual findings and legal conclusions has not harmed petitioners in any way. We thus need not reach the merits of this claim.

In Section 10(e) of the Administrative Procedure Act, Congress has mandated that "due account shall be taken of the rule of prejudicial error."[49] As applied to the case *sub judice,* this directive requires affirmance of the Commission's grant of the applicant's request for a permit to operate as a motor contract carrier. However much petitioners might at one time have been hindered in framing the contested issues, or in fashioning concomitant argumentation, administrative proceedings subsequent to the decision-notice provided petitioners with ample opportunity to discern and respond to the particular reasoning pursuant to which the Commission awarded the permit here contested. We thus find that petitioners have suffered no prejudice from the alleged deficiency in the decision-notice, and accordingly decline to utilize this putative error as the basis for reversal.

Our decision to affirm is further bolstered by a related doctrine. Courts often have refused to strike down an agency ruling for allegedly inadequate supportive explanation when reasonably able to discern the path of the agency's reasoning.[50] Al-

---

2–3, J.App. 122–123, are neither arbitrary and capricious nor bereft of substantial supportive evidence in the record. See 5 U.S.C. §§ 706(2)(A), (E) (1976).

**47.** Petitioners also maintain that, in light of the difficult burden of proof placed upon them by the Commission to demonstrate that Gollott & Sons does *not* merit a permit to operate as a motor contract carrier, the Commission's denial of their petitions for an evidentiary hearing and leave to depose the applicant's witnesses in order to discover facts peculiarly within the applicant's knowledge infringes petitioners' Fifth Amendment right to due process of law. See Brief for Petitioners at 27–30. Since, however, petitioners have not identified any material facts, as yet unrevealed, that they have some reason to suspect might be uncovered at an evidentiary hearing or through depositions, we do not further consider this contention.

**48.** 5 U.S.C. § 557(c) (1976), providing in pertinent part:

All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of . . . findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record . . . .

**49.** 5 U.S.C. § 706 (1976). This court has often invoked this provision. See *Consolidated Gas Supply Corp. v. FERC,* 196 U.S.App.D.C. 57, 62–63, 606 F.2d 323, 328–329 (1979); *Unification Church v. Attorney General,* 189 U.S.App. D.C. 92, 95, 581 F.2d 870, 873, *cert. denied,* 439

U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978); *Doe v. Hampton,* 184 U.S.App.D.C. 373, 385–386, 566 F.2d 265, 277–278 (1977); *Delta Air Lines v. CAB,* 184 U.S.App.D.C. 107, 113, 564 F.2d 592, 598 (1977); *Chrysler Corp. v. FTC,* 182 U.S.App.D.C. 359, 364, 561 F.2d 357, 362 (1977); *Greater Boston Television Corp. v. FCC, supra* note 38, 143 U.S.App.D.C. at 393, 444 F.2d at 851; *Braniff Airways v. CAB,* 126 U.S.App.D.C. 399, 411–412, 379 F.2d 453, 465–466 (1967); *Brown Telecasters v. FCC,* 110 U.S.App.D.C. 127, 128 & n. 3, 289 F.2d 868, 869 & n. 3, *cert. denied,* 368 U.S. 916, 82 S.Ct. 196, 7 L.Ed.2d 131 (1961). Although we apply the prejudicial-error rule "gingerly, if at all," *Yiu Fong Cheung v. INS,* 135 U.S.App.D.C. 244, 248, 418 F.2d 460, 464 (1969), in cases involving fundamental procedural rights, see *Doe v. Hampton, supra,* 184 U.S.App.D.C. at 385 n. 29, 566 F.2d at 277 n. 29; *Greater Boston Television Corp. v. FCC, supra,* 143 U.S.App.D.C. at 393 n. 16, 444 F.2d at 851 n. 16, we think the case at hand does not qualify on this score.

**50.** See *Bowman Transp. v. Arkansas-Best Freight Sys.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447, 456 (1974); *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206, 1219 (1945); *RKO General v. FCC,* 216 U.S.App.D.C. 57, 63, 670 F.2d 215, 221 (1981), *cert. denied,* 456 U.S. 927, 1119, 102 S.Ct. 1974, 2931, 72 L.Ed.2d 442, 73 L.Ed.2d 1331 (1982); *International Detective Serv. v. ICC, supra* note 38, 198 U.S.App.D.C. at 344, 613 F.2d at 1077; *EDF v. EPA,* 167 U.S.App.D.C. 71, 83, 510 F.2d 1292, 1304 (1975); *Greater Boston Television Corp. v.*

though the courts generally have not applied this principle beyond cases in which the agency's rationale was ascertainable from the challenged decision itself, the logic of the doctrine extends to cases, such as this, in which the agency's course of reasoning is made apparent by reference to related administrative proceedings subsequent to the decision, here the decision-notice, that is alleged to be defective for lack of adequate explanatory materials. We find in this precept, then, even further support for our holding that later administrative proceedings dispelled any possible prejudice to petitioners from the brevity of the decision-notice, and that in light of Section 10(e) reversal is unwarranted.

The order under review is accordingly *Affirmed.*

*FCC, supra* note 38, 143 U.S.App.D.C. at 393, 444 F.2d at 851; *WAIT Radio v. FCC,* 135 U.S.App.D.C. 317, 320, 418 F.2d 1153, 1156 (1969); *Benmar Transp. & Leasing Corp. v.* *ICC,* 623 F.2d 740, 746 (2d Cir.1980); *Cross-Sound Ferry Servs. v. United States,* 573 F.2d 725, 730 (2d Cir.1978).